IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[1] RAUL A. MORALES-
GUANILL,
[2] RAFAEL ANTONIO PINA-
NIEVES,

Defendants.

CRIM. NO.: 12-215(DRD/SCC)

## REPORT AND RECOMMENDATION

Defendants Raul A. Morales-Guanill and Rafael Antonio Pina-Nieves each filed separate, *ex parte* motions to sever their trial from that of their co-defendants. *See* Docket Nos. 336, 340. Those motions were referred to the undersigned for report and recommendation. *See* Docket Nos. 345, 359. Because neither the Government nor Co-Defendant Orlando Sierra-Mercado had seen the movants' motions, I entered an order describing, in broad strokes, the basis for the motions, and I set a hearing. *See*

Docket No. 363. That hearing was held on October 2, 2014, and all parties—including the Government and Defendant Sierra—were heard.[1] The movants were further permitted to make certain arguments on the record but outside of the presence of the Government and the co-defendants.[2] I now recommend that the motions be denied.

## I.   Mutually Antagonistic Defenses as a Grounds for Severance

Both Morales and Pina argue that severance is proper here because their trial defenses will be mutually antagonistic. This term of art refers to the situation presented by two co-defendants whose trial defenses, if believed by a jury, would necessarily require the jury not to believe the other. That is,

---

**1.**   As expected, the Government opposed severance. Mercado expressed no position on the question and, when asked directly, stated through counsel that he was *not* requesting severance.

**2.**   Because I believed the question of severance affected both the Government and Sierra, I tried to put both on notice to the greatest extent possible of the movants' reasons for requesting severance. Nonetheless, there was a legitimate need to keep *ex parte* some of the discussions, as well as the motions, because they reveal defense strategy. I note that courts considering motions to sever seem to consider such *ex parte* materials as a matter of course. *See, e.g., United States v. Lopez*, 915 F. Supp. 891, 901 (E.D. Mich. 1996); *United States v. McVeigh*, 169 F.R.D. 362, 364 (D. Col. 1996).

defenses are mutually antagonistic if acquittal of one co-defendant would logically require conviction of the other. Before considering whether the movants' defenses are in fact mutually antagonistic, it is necessary to consider whether mutual antagonism is in fact a proper basis for severance at all. To answer that question, I will begin with the Supreme Court's seminal opinion on the matter.

### A. *Zafiro v. United States*

Pursuant to Rule 8(b), multiple defendants may be charged together in a single indictment where "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions." FED. R. CRIM. P. 8(b). But while Rule 8 expresses a preference for joint trials, Rule 14 provides that trials may nonetheless be severed where a joint trial would "prejudice a defendant or the government." FED. R. CRIM. P. 14(a). Before 1993, many federal courts held that mutually antagonistic defenses could alone provide a basis for severance. *See, e.g.*, *United States v. Arruda*, 715 F.2d 671, 680 (1st Cir. 1983) ("Antagonism of defenses requires severance only where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of a defendant."). Implicit in such

holdings was the view that sufficiently antagonistic defenses were themselves prejudicial.

In *Zafiro v. United States*, 506 U.S. 534 (1993), the Supreme Court rejected this sort of reasoning. To understand why this is so it is useful to begin with the Seventh Circuit's opinion below. There, the defendant made a mutual antagonism argument. Considering it, Judge Posner, writing for the court, recognized that "a vast number of cases say that a defendant is entitled to severance when the 'defendants present mutually antagonistic defenses' in the sense that 'the acceptance of one party's defense precludes the acquittal of the other defendant,' but not when the defendants are engaged merely in 'finger-pointing.'" *United States v. Zafiro*, 945 F.2d 881, 885 (7th Cir. 1991) (quoting *United States v. Keck*, 773 F.2d 759, 765 (7th Cir. 1985)). Judge Posner detected a falsehood in this supposed distinction. *Id.* ("[W]e are not clear why the case in which the acceptance of one party's defense precludes the acquittal of the other defendant could not be regarded as a paradigmatic case of finger-pointing."). After analyzing the motivations of the severance rule, Judge Posner concluded that mutual antagonism had as little relevance to Rule 14's prejudice requirement as did finger-pointing. *Id.* at 886 ("[M]utual antagonism, finger-

pointing, and other manifestations or characterizations of the effort of one defendant to shift the blame from himself to a codefendant neither control nor illuminate the question of severance.").

In *Zafiro*, the Supreme Court affirmed the Seventh Circuit's judgment. 506 U.S. at 537. Like Judge Posner's decision below, Justice O'Connor's opinion for the Court began by noting the many courts that had purported to apply the mutual antagonism rule—though she noted that such arguments had rarely been successful. *Id.* at 538. The Court then quickly disposed of the petitioner's request that it adopt "a bright-line rule, mandating severance whenever codefendants have conflicting defenses." *Id.* To the contrary, it held that "[m]utually antagonistic defenses are not prejudicial *per se*." *Id.*

And with that, the *Zafiro* Court turned to the question of prejudice, which it plainly saw as the fundamental inquiry in considering a motion to sever. To that end, the Court held that severance would be proper "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539. The Court gave several examples of what might constitute such prejudice, none

of which had to do with mutual antagonism.[3] *Id.* More to the point, the Court considered the petitioners' argument "that the very nature of" the petitioners' mutually antagonistic defenses "prejudiced them." The Court understood the petitioners' prejudice argument to be that in the case of mutually antagonistic defenses the jury would conclude either that "(1) that both defendants are lying and convict them both on that basis, or (2) that at least one of the two must be guilty without regard to whether the Government has proved its case beyond a reasonable doubt." *Id.* at 540. The Court rejected both of these theories. Regarding the first, the Court held simply that "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Id.* And as to the second, the Court noted that it had not come to pass in that case, but that any risk of prejudice of that sort

**3.** These examples include the situation where "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant"; where "many defendants are tried together in a complex case and they have markedly different degrees of culpability"; where there is "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant"; and where "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

could be dealt with by jury instructions. *Id.* at 540–41.

At the end of the day, then, it is difficult to see how the prior rule requiring severance in cases of mutually antagonistic defenses, without more, survived *Zafiro*. Instead, *Zafiro*'s plain language indicates that the Seventh Circuit was right and that mutual antagonism is no more inherently prejudicial than finger-pointing.

## B.  Application of *Zafiro* Outside of the First Circuit

After *Zafiro*, the strength of mutual antagonism arguments—never strong in the first place—has been greatly diminished. For example, in a recent opinion rejecting a defendant's mutual antagonism argument, the Seventh Circuit wrote that such arguments had been "foreclose[d]" by *Zafiro*. *United States v. Plato*, 629 F.3d 646, 650–51 (7th Cir. 2010). Indeed, the Seventh Circuit there wrote that *Zafiro* "expressly held that severance is not required when codefendants present mutually antagonistic defenses." *Id.* Similarly, the Eleventh Circuit has held that even where there is mutual antagonism, there must also be an *additional* showing of prejudice. *See United States v. Blankenship*, 382 F.3d 1110, 1122 (11th Cir. 2004).

In fact, every Court of Appeals other than the First and Fourth[4] Circuits has explicitly recognized that after *Zafiro*, mutual antagonism alone does not require severance. *See, e.g., United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (holding that prejudice arising from mutual antagonism could be cured by jury instructions); *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007) (requiring an additional showing of prejudice regardless of whether the defenses were mutually antagonistic); *United States. v. Flores*, 362 F.3d 1030, 1040–41 (8th Cir. 2004) (similar); *United States v. Matthews*, 178 F.3d 295, 299 (5th Cir. 1999) (5th Cir. 1999) ("Severance is not automatically required when co-defendants present mutually antagonistic defenses."); *United States v. Salameh*, 152 F.3d 88, 116 (2d Cir. 1998) (holding that jury instructions can cure prejudice from mutually antagonistic defenses); *United States v. Balter*, 91 F.3d 427, 434 (3d Cir. 1996) (requiring an additional showing of

---

**4.** Some cases from the Fourth Circuit express positions consistent with the cases cited below. *See, e.g., United States v. Little*, 175 F.3d 1017, at *3 (4th Cir. 1999) (unpublished table decision) ("The fact that co-defendants shield themselves with antagonistic or mutually exclusive defenses, however, does not automatically require a severance."). However, other cases suggest that mutual antagonism alone *can* require severance. *See, e.g., United States v. Dinkins*, 691 F.3d 358, 369 (4th Cir. 2012).

prejudice); *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (same); *United States v. Pierce*, 62 F.3d 818, 830 (6th Cir. 1995) ("[M]utually antagonistic defenses do not mandate severance."); *United States v. Buena-Lopez*, 987 F.2d 657, 660 (9th Cir. 1993) ("In *Zafiro*, the Supreme Court expressly rejected the argument that severance is always required whenever defendants present mutually antagonistic defenses.").[5]

Thus, while the Courts of Appeals are not in total agreement as to the contours of the severance analysis after *Zafiro*, they hold, with near universality, that mutual antagonism alone does not require severance. To the contrary, even where real mutual antagonism does exist, those cases require an *additional* showing of prejudice.

## C.  Application of *Zafiro* in the First Circuit

In *Zafiro*, the Supreme Court used "mutually antagonistic" synonymously with "irreconcilable." *See, e.g., Zafiro*, 506 U.S. at 537, 538. Indeed, the Seventh Circuit decision that the Supreme Court reviewed understood "mutually antagonistic

---

5.  I note that there is some inconsistency in the Ninth Circuit's approach. For example, in *United States v. Mayfield*, th e court, relying heavily on pre-*Zafiro* cases, held that severance was proper on the basis of mutual antagonism alone. 189 F.3d 895, 899–900 (9th Cir. 1999) (citing *United States v. Tootick*, 952 F.2d 1078 (9th Cir. 1991)).

defenses" to refer to the situation presented by a defense that, if accepted, would require the conviction of a co-defendant, 945 F.2d 881, 885, and the Supreme Court seems to have accepted this definition for the purposes of its opinion in *Zafiro*, 506 U.S. at 537. Moreover, the *Zafiro* court considered the types of prejudice that mutually antagonistic defenses would create and found that they would *not* require severance. *Id.* at 540–41. It follows, then, that most of the Courts of Appeals use "mutually antagonistic" to refer to defenses that are irreconcilable, not simply in tension. And even in the case of irreconcilable defenses, both *Zafiro* and the bulk of the cases interpreting it require prejudice beyond the fact of irreconcilability.

Language from the First Circuit, however, is in conflict with these holdings. In its first decision interpreting *Zafiro*, the First Circuit wrote that severance was "require[d]" where "the tension between defenses" was "so great that a jury would have to believe one defendant at the expense of another." *United States v. Yefsky*, 994 F.2d 885, 896–97 (1st Cir. 1993).[6]

---

**6.** In *Yefsky*, the First Circuit suggested that *Zafiro* held that "*mere* antagonism does not require severance." *United States v. Yefsky*, 994 F.2d 885, 896 (1st Cir. 1993) (emphasis added). Then, citing its own pre-*Zafiro* precedent, it held that sufficient antagonism *could* require severance. *Id.* (citing *United States v. Arruda*, 715 F.2d 671, 679 (1st Cir.

Though *Zafiro* is precisely to the contrary, the First Circuit has stated the rule in these terms on many subsequent occasions. *See, e.g.*, *United States v. Rose*, 104 F.3d 1408, 1415 (1st Cir. 1997) (explaining that it had "refined the analysis" of *Zafiro* to hold that "antagonistic defenses only require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other"); *see also United States v. Floyd*, 740 F.3d 22, 36–37 (1st Cir. 2014) (holding that the co-defendants' defenses were not so antagonistic as to require severance); *United States v. DeCologero*, 530 F.3d 36, 52 (1st Cir. 2008) ("Antagonistic defenses can require severance when they are truly irreconcilable, or at least substantially incompatible."); *United States v. Tejeda*, 481 F.3d 44, 55 (1st Cir. 2007) (similar); *United States v. Tiem Trinh*, 665 F.3d 1, 18 (1st Cir. 2011) (similar).

Reviewing the First Circuit's post-*Zafiro* decisions regarding mutually antagonistic defenses, I can find none that can be read as requiring a showing of prejudice where the defenses

---

1983)). But *Yefsky*'s distinction between "mere" and "great" antagonism—which has been repeated countless times since—cannot be found in *Zafiro*; in fact, as I explain above, the distinction is contrary to *Zafiro*'s holding.

are truly mutually antagonistic.[7] Instead, they state that severance is *required* in such circumstances, despite *Zafiro*'s clear holding that it is not. That said, the First Circuit has never granted relief on mutual antagonism grounds because it has never found that the defenses were, in fact, mutually antagonistic.

---

**7.** In at least one unpublished decision, the First Circuit has stated the rule in a manner consistent with *Zafiro*. *See Prigden v. Saba*, 131 F. App'x 732, 733–34 (1st Cir. 2005) (per curiam) ("[A] joint trial in the case of antagonistic defenses violates a defendant's constitutional due process rights only if it compromises a specific trial right of the defendant or if it prevents the jury from making a reliable judgment about guilt or innocence."). Elsewhere, however, the First Circuit has only discussed additional prejudice in the context of the showing necessary to receive a new trial. *See, e.g.*, *United States v. Tejeda*, 481 F.3d 44, 54 (1st Cir. 2007) (holding that when severance is refused, the appellant must make a "'strong showing of prejudice'" in order to receive a new trial (quoting *United States v. Boylan*, 898 F.2d 230, 246 (1st Cir. 1990))). Given the posture in which these cases come before the First Circuit, these burdens may well be functionally identical. *See, e.g.*, *id.* at 55 (discussing the *Zafiro*-type prejudice that would give rise to a right to a new trial). Nonetheless, the bulk of the post-*Zafiro* cases suggest that a judge considering a pre-trial motion to sever should grant it based on a showing of mutual antagonism alone. *See, e.g.*, *United States v. Rose*, 104 F.3d 1408, 1415 (1st Cir. 1997) (suggesting that severance is "require[d]" whenever the "tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other").

### D. The First Circuit's Post-*Zafiro* Cases Should be Under-stood as Dicta

A close reading of *Zafiro* reveals that the Court used "mutually antagonistic defenses" as a term of art meaning "irreconcilable," but because the Court spent no time analyzing whether the appellants' defenses were in fact mutually exclusive,[8] this fact is easy to miss.[9] My sense is that the First Circuit did not understand *Zafiro* to refer to defenses that were in fact mutually antagonistic, in the sense of irreconcilable; thus, it has continued to hold that such irreconcilability alone can mandate severance.[10] The Fourth Circuit seems to have

---

**8.** Justice Stevens criticized the Court for just this. He understood the Court to be assuming that the appellants' defenses were mutually antagonistic, and holding that even if that were the case, no prejudice existed. *See Zafiro*, 506 U.S. at 543 (Stevens, J., concurring). Justice Stevens would have left the prejudice question for another day, as he believed that the appellants' defenses were not in fact irreconcilable. *Id.*

**9.** That said, the Court did consider whether irreconcilable defenses—where "two defendants both claim they are innocent and each accuses the other of the crime"—could alone cause severance-requiring prejudice, and it rejected the theories of prejudice based on that situation. *Zafiro*, 506 U.S. at 540.

**10.** *See generally* SCOTT HAMILTON DEWEY, *The Case of Missing Holding: The Misreading of* Zafiro v. United States, *the Misreplication of Precedent, and the Misfiring of Judicial Process in Federal Jurisprudence on the Doctrine of*

made a similar error, explaining why it, too, is out of sync with the other Courts of Appeals. But nothing in *Zafiro* can be read to support the First and Fourth Circuits' rules: there is a direct tension between the First Circuit's holding that "antagonistic defenses . . . require severance if the tensions between the defenses are so great that the finder of fact would have to believe one defendant at the expense of the other," *Rose*, 104 F.3d at 1415, and the Supreme Court's holding that "[m]utually antagonistic defense are not prejudicial *per se*," *Zafiro*, 506 U.S. at 538.

But as I said earlier, the First Circuit has never found that any appellants' defenses were in fact mutually antagonistic, and so its language suggesting that a further prejudice showing was not needed has never been necessary to its holding. I believe, therefore, that those statements should be treated as non-controlling dicta, not as a rejection of *Zafiro*'s rule. The First Circuit's statements notwithstanding, then, I will analyze the movants' motions under the standard articulated by *Zafiro*.

---

*Mutually Exclusive Defenses*, 41 Val. U. L. Rev. 149, 152–53 (2006) (arguing that many courts have misinterpreted *Zafiro* and failed to recognize that "it applies equally to 'irreconcilable' or 'mutually exclusive' defenses as well as 'mutually antagonistic' defenses").

I also note here that I find the Seventh Circuit's approach to severance after *Zafiro* preferable to that of the Courts of Appeals that treat mutual antagonism as a threshold question. For example, the Tenth Circuit understands *Zafiro* as implementing a "three step inquiry" for determining whether severance is appropriate. *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007). First, the court determines whether the defenses are irreconcilable. *Id.* Second, it requires a further showing of prejudice. *Id.* And third, it determines whether that prejudice requires severance or a lesser remedy. *Id.* The problem with this approach is that the types of prejudice that the *Zafiro* Court wrote might require severance would do so whether or not the co-defendants were presenting irreconcilable defenses. For example, evidentiary spillover or an inability to present important evidence would be highly prejudicial—and might require severance—on their own. *See Zafiro*, 506 U.S. at 539. Thus, as the Seventh Circuit has recognized, the question of irreconcilable defenses is not of much relevance to the question of severance. *See Plato*, 629 F.3d at 650–51. At most, it has ancillary relevance, strengthening the case for severance when other sources of prejudice are present. *See, e.g.*, *United States v. McVeigh*, 169 F.R.D. 362, 371 (D. Colo. 1996)

(granting severance where there were irreconcilable defenses and various evidentiary and confrontation clause issues). Irreconcilable defenses alone create prejudice that is solvable by jury instructions. *See, e.g., United States v. Mietus*, 237 F.3d 866, 873 (7th Cir. 2001) ("Even a showing that two defendants have 'mutually antagonistic defenses,' that is, that the jury's acceptance of one defense precludes any possibility of acquittal for the other defendant, is not sufficient grounds to require a severance unless the defendant *also* shows prejudice to some specific trial right." (emphasis added)); *see also Zafiro*, 506 U.S. at 540–41 (holding that the type of prejudice caused by irreconcilable defenses is curable with jury instructions).

## II.  The Motions to Sever

Based on the movants' motions and their *ex parte* representations during the hearing, I believe that their defenses are mutually antagonistic. Each will argue that a conspiracy to defraud did exist, that the movant himself is an innocent third party, and that the perpetrator were Sierra and the other movant. Especially because both will argue that the conspiracy did exist, and that it involved Sierra, there is a fundamental irreconcilability between their defenses. That is, this case does not present  the situation where the jury could believe both of

the defendants[11] or where believing the movant would have no bearing on the co-defendant's culpability.[12] To the contrary, if the jury believed Morales, for instance, it would necessarily have to believe that Pina was guilty—that *he* was the one acting with Sierra, while Morales stood by innocently.

Notwithstanding their irreconcilable defenses, however, the movants must also show the specific prejudice that they would suffer from being tried together. This prejudice must be to "a specific trial right" or be something that would "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. To this end, the movants suggest that there would be improper evidentiary spillover, which would bring into question the jury's verdicts. *See id.* at 539. Typically, such "spillover" arguments are appropriate where a "minor participant" is tried "alongside the major conspirators." *United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir.

---

**11.** *Cf. United States v. Luciano-Pacheco*, 794 F.2d 7, 9–10 (1st Cir. 1986) (holding that there was no mutual antagonism because the jury could have believed both of the defendants); *United States v. Torres-Maldonado*, 14 F.3d 95, 105 (1st Cir. 1994) (similar).

**12.** *Cf. United States v. Peña-Lora*, 225 F.3d 17, 35 (1st Cir. 2000) (holding that no mutual antagonism existed where movant's defense said nothing about her co-defendants' culpability).

1995). This argument has little force in the present case, however, because the Government is alleging that the movants, along with the other defendants, all acted together in a single scheme. Indeed, neither movant has pointed to any specific evidence that would not be admissible against him were he tried separately. Thus, their spillover arguments are without force. *See United States v. LiCausi*, 167 F.3d 36, 49 (1st Cir. 1999) ("[S]ince all three defendants were charged as coconspirators, almost all of the evidence relating to other defendants was relevant to, and therefore independently admissible in, the prosecution's case against Fogerty. As we have said, this circumstance precludes a spillover argument."). The movants do not argue that the other types of prejudice discussed by *Zafiro* exist, nor do I find any basis for them.

That said, this case raises the possibility of a difficult situation that many other defendants, in other courts, have argued requires severance, and it is useful to address it here briefly. Simply put, the situation is this: What happens if one defendant testifies and the other does not, and the testifying defendant's attorney, in his closing argument, wishes to mention his client's willingness to testify—or, even more problematically, his co-defendant's refusal? Arguments in this

vein arise from the Fifth Circuit's decision in *De Luna v. United States*, 308 F.2d 140 (5th Cir. 1962). There, the court wrote that in such a situation, the non-testifying co-defendant had a "right to silence free from prejudicial comments, even when they come only from a co-defendant's attorney." *Id.* at 141. This in itself is unremarkable. But the court went further, stating that when "an attorney's duty to his client should require him to draw the jury's attention to the possible inference of guilt from a co-defendant's silence," severance is necessary. *Id.*

The First Circuit has mentioned *De Luna* a few times, without endorsing the full scope of its reasoning. In *Varela-Cartagena v. United States*, the court considered a case where a defendant's counsel commented on the defendant's decision to testify in bolstering his credibility, but the attorney never commented on the co-defendant's silence. *See* 397 F.2d 278, 280 (1st Cir. 1968). Because of the attorney's decision not to mention the co-defendant's silence, the court found *De Luna* distinguishable. *Id.* More importantly, language in *Varela-Cartagena* suggests that the right of the testifying defendant to comment on his own decision to testify must be "sensitive to the rights of" his co-defendant. *Id.* ("The privilege against self-incrimination of a co-defendant who does not choose to testify

does not go so far as to deprive one who does so choose of effective arguments in his behalf, so long as it is, as it was here, sensitive to the rights of others."). And then in *United States v. Bonfant*, the First Circuit discussed *De Luna* and *Varela-Cartagena*, writing that a defendant's "right to comment upon one's testimony may clash with a codefendant's right to not have his or her silence referred to by other parties at trial," and that this "could be an important factor in a court's decision of whether to grant a motion to sever a codefendant's trial." 851 F.2d 12, 15 n.2. Thus, the First Circuit cases suggest that a criminal defendant who chooses not to testify must be free from having that fact commented upon either by the Government *or* his co-defendants. It does not, however, support the position that the co-defendant has a right to comment upon the defendant's silence (though neither does it clearly reject such a notion).[13]

In other Courts of Appeals, *De Luna* has been the subject of substantial criticism. In *United States v. McClure*, for example, the Tenth Circuit expressed substantial doubt about the existence of any right of a defendant to comment on his co-

---

**13.**  I note that I have found no cases from this district—or, for that matter, from any other district court in the First Circuit—applying *De Luna*, *Varela-Cartagena*, or *Bonfant* in this context.

defendant's silence. 734 F.2d 484, 490 (10th Cir. 1984). Writing more than twenty years after *De Luna* was decided, the court noted that it could find no decision that had ordered severance based on *De Luna*'s reasoning. *Id.* at 490–91. Instead, the Tenth Circuit flatly held that the testifying defendant *could not* comment on a co-defendant's silence under any circumstances. *Id.* at 491. The Sixth Circuit has come to the same conclusion. *United States v. Causey*, 834 F.2d 1277, 1287 (6th Cir. 1987) (holding that even in separate trials, a testifying co-defendant would be prohibited from commenting on a co-defendant's failure to testify); *see also United States v. Kahn*, 381 F.2d 824, 840 (7th Cir. 1967) (holding that a defendant is not prejudiced when he is refused permission to comment on the silence of a co-defendant).

To be sure, there are cases that follow *De Luna* to conclude that a testifying defendant's attorney has a "duty" to comment on a co-defendant's silence when their defenses are mutually antagonistic. *See, e.g.*, *United States v. Johnson*, 713 F.2d 633, 652 (11th Cir. 1983). But apart from *De Luna*'s much-criticized dicta, it is not clear where such a duty originates. In the absence of First Circuit precedent requiring a contrary result, I would concur with the Sixth and Tenth Circuits' conclusions that no

such right exists. Indeed, Supreme Court precedent suggests that juries should be discouraged, to the extent possible, from drawing *any* inferences from an accused's silence. *See Carter v. Kentucky*, 450 U.S. 288, 300 (1981) (requiring that judges give no-adverse-inference instructions at the guilt phase of criminal trials). The "duty" to which *Johnson* refers is in obvious tension with such principles.

Rather than acknowledge such a duty, the better course would be to do precisely what the First Circuit permitted in *Varela-Cartagena*: permit the testifying defendant's counsel to comment, carefully, on his own client's decision to testify, but require him not to comment on the non-testifying co-defendant's silence. Such a procedure prejudices no one, and it protects the Rules' preference for joint trials.

## III.   Conclusion

For all of the reasons stated above, I conclude that neither movant has established a real likelihood of prejudice from a joint trial. Moreover, should the matter arise, the testifying co-defendant should be prohibited from commenting on the silence of a non-testifying co-defendant. Accordingly, I

RECOMMEND that the motions to sever be DENIED.[14]

IT IS SO RECOMMENDED.

The parties have fourteen days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this report and recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-51 (1st Cir. 1994); *United States v. Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 6th day of October, 2014.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE

---

**14.** The Government's informative motion, Docket No. 369, is NOTED.